Farm & Home Savings & Loan Association of Missouri, a Corporation, Appellant, v. Geo. W. Theiss, William Burgard and A. W. Pfeifer.—111 S. W. (2d) 189.

Division Two, December 17, 1937.*

*NOTE: Opinion filed at May Term, 1937, August 26, 1937; motion for rehearing filed; motion overruled at September Term, December 17, 1937.

*Ewing, Ewing & Ewing* for appellant.

*Walter Wehrle* and *Robert F. Stanton* for respondents.

**42**

BOHLING, C.—This case turns on whether or not under the facts involved shareholders and directors of a corporation who place their names on the back of a nonnegotiable promissory note of the corporation prior to the consummation of the transaction may establish a contemporaneous parol agreement that they were not to be held liable as promissors on said note, and whether or not such signatures are supported by a consideration.

The Union Coffee & Grocer Company, a corporation, executed its $25,000 principal amount nonnegotiable promissory note, bearing date of November 20, 1928, secured by deed of trust on certain real estate in the city of St. Louis, and payable in monthly installments to the Farm & Home Savings & Loan Association, a corporation, appellant. The papers were executed at the office of the coffee company by A. G. Young, as president, and A. W. Pfeifer, as secretary, in the presence of Robert E. Steele, a representative, of the association, and the directors of the coffee company, A. W. Pfeifer, A. G. Young, William Burgard, Geo. W. Theiss and A. M. Genisio, who placed their names on the back of the note. Default occurring, appellant caused the deed of trust to be foreclosed on January 9, 1930, and by this action seeks to recover, $11,804.23, balance due on said notes, after crediting the proceeds of said foreclosure sale, from Messrs. Pfeifer, Burgard and Theiss, respondents, the said coffee company having been adjudged bankrupt and a judgment against Messrs. Young and Genisio having been obtained by appellant in the State of Illinois. Respondents' evidence, admitted over the objections and exceptions of appellant, was to the effect that respondents signed the note for the accommodation of appellant to warrant that the instrument was duly authorized and executed by the coffee com-

pany and that they had a contemporaneous oral agreement that they incurred no liability as makers or promisors on said instrument. Each respondent testified that he personally did not receive any part of the $25,000, which was applied by the coffee company to the discharge of obligations of said company, including an indebtedness of $10,000 about to become due, secured by a deed of trust.

Respondents say the testimony was admissible to show they signed the note for the accommodation of appellant and without consideration. We are referred to cases involving accommodation and accommodated parties under the Negotiable Instruments Law. Illustrative of these is Dickherber v. Turnbull (Mo. App.), 31 S. W. (2d) 234, 236 (2, 3), holding that if the payee is the party accommodated by the accommodation party, the accommodated payee acquires no rights against such accommodation party, there being no consideration as between them. Other cases relied on by respondents are Chicago T. & T. Co. v. Brady, 165 Mo. 197, 208, 65 S. W. 303, 307 (holding the receiver of an accommodated bank not entitled to enforce obligations evidenced by notes against its accommodation maker); and the cases cited in the Dickherber case. An accommodation party, within the cases relied upon by respondents, is one who signs "without receiving value therefor, and for the purpose of lending his name to some other person." [Sec. 2658, R. S. 1929, Mo. Stat. Ann., p. 661.] Overland Auto Co. v. Winters, 277 Mo. 425, 437, 210 S. W. 1, 4, speaking of "accommodation paper," quotes and applies the following: " 'It represents and is a loan of credit to the party accommodated;' " and " 'The accommodated party, in a legal sense, is the person to whom the credit of the accommodating party is loaned. . . .' " The instant case concerns a nonnegotiable [Sec. 5597, R. S. 1929, Mo. Stat. Ann., p. 791; — nonassignable, Layton v. Hough, 169 Mo. App. 213, 229, 152 S. W. 410, 414(5)] note; and we are more than perplexed to understand how respondents were the accommodating parties and appellant was the accommodated party in the legal sense that respondents loaned the credit of their names to appellant who paid over to the coffee company $25,000 in exchange for a $25,000 nonnegotiable, nonassignable, note of said coffee company—the party respondents accommodated in law.

■ A third party affixing his signature in blank on the back of commercial paper enters into a legal relationship with the other parties to the paper. As succinctly stated by ROMBAUER, P. J., in Barnett v. Nolte, 55 Mo. App. 184, 185: "One who writes his name on the back of a note, of which he is neither payee nor indorsee, is *prima facie* a joint maker, whether the note is negotiable or not. [Citing cases.] He may show, however, against anyone, except an innocent holder for value before maturity, that it was the understanding of

the parties, at the time, that he was to be held as indorser or as guarantor or as surety only. [Citing cases.]'' [See Powell v. Thomas, 7 Mo. 440; Lewis v. Harvey, 18 Mo. 74, 77; Chaffee v. Memphis, etc., Railroad Co., 64 Mo. 193, 195; Herrick v. Edwards, 106 Mo. App. 633, 638, 81 S. W. 466, 467.] By statute (Secs. 2691, 2692, R. S. 1929, Mo. Stat. Ann., pp. 685, 686) a change was effected in the rule stated in the Barnett case insofar as it relates to negotiable paper—such a signer in blank being deemed an indorser. But, in its legal commercial sense, there is no such thing as an ''indorsement'' of nonnegotiable (nonassignable) commercial paper. [Daniel on Negotiable Instruments (7 Ed.), secs. 798, n. 13, 1553; Herrick v. Edwards, supra.] Appellant, stating parol evidence would have been proper to establish respondents' liability as joint makers, or sureties or guarantors, because such testimony would have been in harmony with, not in contravention of, respondents' written contract evidenced by the nonnegotiable instrument here involved [see cases last above cited], contends parol testimony was inadmissible to vary, contradict and defeat the contract the law established by reason of respondents' signatures. Appellant's position is well taken. The rule of law is well established, and rests on like principles which preclude the defeat by parol testimony of the contractual provisions of or the covenants the Negotiable Instruments Law writes into negotiable paper for the parties. [See Milan Bank v. Richmond, 235 Mo. 532, 539(I), 139 S. W. 352, 354(1, 2); Rodney v. Wilson, 67 Mo. 123; Jones v. Shaw, 67 Mo. 667, 669; Overland Auto Co. v. Winters, 277 Mo. 425, 432, 210 S. W. 1, 2(1); Bank of Dexter v. Simmons (Mo. App.), 204 S. W. 837, 838(2); Thompson v. Bratcher (Mo. App.), 8 S. W. (2d) 1027, 1029(4).]

■ Notwithstanding the testimony of respondents that they personally received no consideration for their respective signatures, the detriment accruing to plaintiff by reason of its payment of $25,000 to the coffee company [Starr v. Crenshaw, 279 Mo. 344, 353, 213 S. W. 811, 814(2); People's Bank v. Hunter, 216 Mo. App. 334, 339, 264 S. W. 54, 55(4)], as well as the benefit accruing to respondents as shareholders and directors of said coffee company by reason of said payment [Thompson v. McCune, 333 Mo. 758, 765(3), 63 S. W. (2d) 41, 44(3), and cases there cited], constituted a valuable consideration for respondents' signatures. The coffee company, of course, received a benefit.

■ Mr. Pfeifer, after signing the note as secretary of the corporation on its face, was the first director to sign the note on the back and added the word ''secretary'' after his signature. Mr. Steele stated this was not necessary and, according to respondents, struck out the word ''secretary.'' Respondents say this created a latent ambiguity and seek to justify the admission of the parol tes-

timony establishing their nonliability on that ground. The undisputed testimony established the word "secretary" was stricken out contemporaneous with Pfeifer's signing, prior to the signing by the other directors, and several days prior to the consummation of the transaction by appellant's payment of the money to the coffee company. The cases cited by respondents do not establish a latent ambiguity under the facts here involved (consult Matthews v. Coalter, 9 Mo. 697, 701(3)); and those stressed (Myers v. Chesley, 190 Mo. App. 371, 374, 177 S. W. 326(1), and International Store Co. v. Barnes (Mo. App.), 3 S. W. (2d) 1039, 1041(4)) are to be distinguished on their facts. Respondents proceed *nisi* upon the theory they affixed their personal signatures on the back of the instrument but incurred no liability because they did so for the accommodation of appellant and without receiving any consideration therefor.

No dispute exists as to the amount of the note or the correctness of the credit thereon. From what we have said, appellant, under the pleadings and the evidence, was entitled to have its request for a directed verdict granted. We, therefore, reverse the judgment and remand the cause with directions to enter judgment in favor of appellant and against respondents in accord with the provisions of the note offered in evidence, less the credit shown thereon. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.